

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 3, 2008

The Honorable Harold Baer
United States District Judge
Southern District of New York
United States Courthouse
500 Pearl Street, 2230
New York, NY  10007

          Re:  **United States v. Rodriguez et al.**,
               **S1 07 Cr. 699 (HB)**

Dear Judge Baer:

          The Government respectfully submits this letter to
notify the Court and the defendant of the Government's intention
to offer a redacted version of defendant Bryant De Los Santos'
post-arrest statement pursuant to <u>Bruton</u> v. <u>United States</u>, 391
U.S. 123 (1968), and its progeny.  In addition, the Government
also respectfully moves to preclude the admission, by Demi
Abriham, of certain portions of his post-arrest statement.

### BACKGROUND

          Following Bryant De Los Santos' arrest on June 27,
2007, he was administered his <u>Miranda</u> warnings.  De Los Santos
waived his rights, and agreed to make a statement.  This
statement was recorded.  (A transcript of De Los Santos' Post-
Arrest Statement is attached in its entirety as Exhibit A.)  In
addition to admitting his role in the instant offense, De Los
Santos also implicated defendant Demi Abriham, a/k/a "300."  (<u>See</u>
Ex. A at 3, 4, 8.)

          Similarly, following Demi Abriham's arrest on June 27,
2007, he was given his <u>Miranda</u> warnings.  Abriham waived his
rights, and also agreed to make a statement.  After initially
admitting to law enforcement that he knew De La Cruz (Abriham
called him "Tio") was involved in robberies, he later minimized
his knowledge of Tio's involvement in robberies when law

Hon. Harold Baer
January 3, 2008
Page 2

enforcement requested that he record his statement.  (A copy of
Abriham's recorded statement is attached as Exhibit C.)

**B.    The "Brutonized" Post-Arrest Statement of De Los Santos
       Should Be Admitted**

   **1.    Admissibility of Post-Arrest Statements Offered by the
           Government**

          A defendant's statement to the authorities following
his arrest may be offered into evidence by the Government on two
possible bases.

          When the government offers in evidence the post-
          arrest statement of a defendant it commonly does
          so for either of two reasons.  It may wish to use
          the statement to establish the truth of the matter
          stated.  In these circumstances, under Rule
          801(d)(2)(A) the statement is not hearsay, because
          it is simply a statement of the opposing party.
          On the other hand, the government may wish to
          offer the statement to show that the defendant
          made false representations to the authorities,
          from which the jury could infer a consciousness of
          guilt, and hence guilt.

United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982).

          The defendant does not have a parallel ability to offer
the statement into evidence.  "When the defendant seeks to
introduce his own prior statement for the truth of the matter
asserted, it is hearsay, and it is not admissible.  When the
defendant offers his own statement simply to show that it was
made, rather than to establish the truth of the matter asserted,
the fact that the statement was made must be relevant to the
issues in the lawsuit."  Id.

          The Government is under no obligation to offer
exculpatory statements when it offers inculpatory admissions.
See United States v. Branch, 91 F.3d 699, 728 (5th Cir. 1996)
(finding that "self serving [exculpatory] statement that does not
contradict, explain, or qualify the rest of the statement" did
not need to be offered by Government under rule of completeness
when Government offered inculpatory statements); United States v.
Smith, 794 F.2d 1333, 1335-36 (8th Cir. 1986) (holding that
district court did not err in precluding cross-examination on
portions of post-arrest statement describing relationship to co-
defendant and implicating co-defendant when Government offered

Hon. Harold Baer
January 3, 2008
Page 3

admission that defendant had been present at the time of co-
defendant's arrest).

        Nevertheless, there are certain instances when a
defendant may require the admission of certain portions of a
post-arrest statement when the Government offers excerpts of a
post-arrest statement.  Rule 106 "is stated as to writings in
Fed. R. Evid. 106, but Fed. R. Evid. 611(a) renders it
substantially applicable to oral testimony."  United States v.
Alvarado, 882 F.2d 645, 650 n.5 (2d Cir. 1989).  "Under this
principle, an omitted portion of a statement must be placed in
evidence if necessary to explain the admitted portion, to place
the admitted portion in context, to avoid misleading the jury, or
to ensure fair and impartial understanding of the admitted
portion. . . .  The completeness doctrine does not, however,
require the admission of portions of a statement that are neither
explanatory of nor relevant to the admitted passages."  United
States v. Jackson, 180 F.3d 55, 73 (2d Cir.), on reh'g, 196 F.3d
383 (1999).  The burden rests with the defendant to demonstrate
that the portions of the statement he seeks to offer are
necessary to clarify or explain the portions the Government
intends to offer.  United States v. Glover, 101 F.3d 1183, 1190
(7th Cir. 1996) ("[T]he proponent of the additional evidence
sought to be admitted must demonstrate its relevance to the
issues in the case, and must show that it clarifies or explains
the portion offered by the opponent.").

        The Second Circuit has noted that this rule permitting
the exclusion of statements when they are not explanatory of or
relevant to the admitted passages is especially applicable where
"the statement was offered as a false exculpatory assertion"
because the Fifth Amendment rights of the defendant are not
implicated, i.e., the defendant is not forced to testify to
overcome distortions arising from its admission.  Marin, 669 F.2d
at 85 n.6 (holding that rule of completeness not violated where
Government offered portion of statement dealing with
circumstances leading up to meeting with co-defendant but
excluding defendant's statement that co-defendant was the one who
placed the bag containing narcotics in the trunk because "it was
neither relevant to the rest of the statement nor necessary to
explain or place in context the admitted portion").

## B.  Admissibility of "Brutonized" Post-Arrest Statements

        In United States v. Bruton, 391 U.S. 123 (1968), the
United States Supreme Court held that, in a joint trial, the
admission of a co-defendant's confession that implicates the
defendant violates the defendant's rights under the Confrontation
Clause of the Sixth Amendment.  However, the broad right

Hon. Harold Baer
January 3, 2008
Page 4

delineated in <u>Bruton</u> was subsequently circumscribed by <u>Richardson</u> <u>v. Marsh</u>, 481 U.S. 200, 208 (1987), which held that where a co-defendant's statement "was not incriminating [to the defendant] on its face, and became so only when linked with evidence introduced later at trial," it was proper to presume that a jury would follow the court's limiting instructions to consider a co-defendant's statements only against the co-defendant.

The Second Circuit has repeatedly approved of the admission of statements made by defendants that have been redacted to replace the names of any co-defendants with neutral pronouns, with no indication that the original statement contained actual names. See <u>United States v. Sanin</u>, 252 F.3d 79, 84-85 (2d Cir. 2001); <u>United States v. Smith</u>, 198 F.3d 377, 385 (2d Cir. 1999); <u>United States v. Williams</u>, 936 F.2d 698, 700 (2d Cir. 1991) (approving substitution of "guy"); <u>United States v.</u> <u>Tutino</u>, 883 F.2d 1125, 1135 (2d Cir. 1989). Such statements are admissible as long as "the statement standing alone does not otherwise connect co-defendants to the crimes." See <u>Sanin</u>, 252 F.3d at 85; <u>Williams</u>, 936 F.2d at 700; <u>Tutino</u>, 883 F.2d at 1135 ("a redacted statement, in which the names of co-defendants are replaced with neutral pronouns, with no indication to the jury that the original statement contained actual names, and <u>where the statement standing alone does not otherwise connect co-defendants to the crimes</u>, may be admitted without violating a co-defendant's <i>Bruton</i> rights.") (emphasis added); <u>United States v. Kyles</u>, 40 F.3d 519, 526 (2d Cir. 1994) (statement which replaced a defendant's name with the neutral pronoun "he," – so that it read "he got me into this, these bank robberies" – did not standing alone connect the defendant to the robberies.").

Moreover, these holdings were undisturbed by <u>Crawford</u> <u>v. Washington</u>, 541 U.S. 36 (2004). <u>Crawford</u> concerned the admission against a defendant of a testimonial statement made by the defendant's wife, where the defendant had no opportunity to cross-examine her. Thus, <u>Crawford</u> has no bearing on <u>Richardson</u> and its progeny, which concern the admissibility against the defendant (and not against a co-defendant) of post-arrest statements made by the defendant himself or herself. Under Second Circuit case law following <u>Richardson</u>, if a defendant's statements are admitted solely against the defendant, the Sixth Amendment rights of co-defendants are protected by the use of neutral pronouns that omit reference to the co-defendants.

Hon. Harold Baer
January 3, 2008
Page 5

## II.    The Government's Proffered "Brutonized" Statement by De Los Santos

On June 27, 2007 member of the Joint Firearms Task Force ("JFTF") placed defendant Bryant De Los Santos under arrest.  After being advised of his Miranda rights both orally and in writing, De Los Santos made certain statements regarding his involvement in the robbery for which he is charged.  This statement was recorded using an audiotape.  (See Exhibit A.)

Based on the principles explained in Bruton and its progeny, the Government has redacted certain portions of De Los Santos' statement.  Attached as Exhibit B is a red-lined version of the statement, with certain portions redacted.

The Government submits that its version of De Los Santos' statement fully complies with Bruton because the statement standing alone does not inculpate De Los Santos' co-defendant Demi Abriham, or any of the other co-defendants, to any of the crimes charged in the Indictment.  There is nothing in De Los Santos' statement that could be construed as facially incriminating to any his co-defendants.  See United States v. Smith, 198 F.3d 377, 385 (2d Cir. 1999).  Of course, should the Court admit the statement into evidence as redacted, the Government consents to and requests that the Court provide a proper limiting instruction at the time the statement is admitted into evidence.

On the other hand, the Government does not intend to elicit the following,[1] and seeks to preclude the defense from eliciting any evidence regarding these portions of De Los Santos' post-arrest statement or from otherwise presenting these statements to the jury:

SHANHAI:            Everybody in the car knew about that?

DE LOS SANTOS:      Nah.

SHANHAI:            Or just you and.

DE LOS SANTOS:      Nah, just me and 300 knew about that.

p. 4-5

---

[1]    The Government reserves the right to cross-examine Pedro Cabrera concerning any of these statements if he testifies at trial and to present this evidence in rebuttal.

Hon. Harold Baer
January 3, 2008
Page 6

SHANHAI:              ~~Did you speak to the other two guys or did~~
                     ~~they know what was happening?~~

DE LOS SANTOS:       ~~Nah, they thought they were dropping me off~~
                     ~~in my aunt's house.~~

SHANHAI:              ~~Okay.~~

DE LOS SANTOS:       ~~Which was in the Bronx, and then we.~~

p. 5


SHANHAI:              Okay.  During that whole time when that,
                     everybody's following each other or turning
                     and, or you're getting phone calls, what was
                     the driver and the other guy doing?

DE LOS SANTOS:       Talking on their cell phone with their girls
                     and shit.

SHANHAI:              At that point did they have any idea what was
                     going on?

DE LOS SANTOS:       They driving me to my aunt's house.

SHANHAI:              That's what they thought was happening?

DE LOS SANTOS:       Yeah.

p. 7-8.


        There is no legitimate basis on which De Los Santos or
any of his co-defendants could elicit these excised portions of
his post-arrest statement.  The excised portions consist entirely
of hearsay statements by De Los Santos in an attempt to protect
Pedro Cabrera and an unindicted co-conspirator, Din Celaj.

        Finally, the Government's proposed redacted post-arrest
statement complies with the rule of completeness.[2]  None of the
redacted portions is necessary to clarify or explain the
statement that the Government intends to offer.

_____

        [2]   Of course, if Abriham wishes to present his version of
why he engaged in the conduct he did, and what his state-of-mind
was in doing so, he can do so through competent evidence, including
his own testimony.

Hon. Harold Baer
January 3, 2008
Page 7

### III.    Demi Abriham Should be Precluded From Offering His Self-Serving Statement

At trial, the Government intends to elicit testimony about certain portions of Abriham's post-arrest statement, including the fact that he admitted knowing that "Tio" was involved in robberies.  The Government does not intend to elicit testimony about Abriham's later exculpatory statements.  See Branch, 91 F.3d at 728; Smith, 794 F.2d at 1335-36.  Specifically, the Government does not intend to offer the recorded statement by Abriham.  Not only is this statement in large part exculpatory and self-serving, but it violates almost in its entirety Bruton because Abriham makes several statements about De Los Santos.  Therefore, the Government respectfully requests that the Abriham be precluded from eliciting or admitting those portions of Abriham's post-arrest statement that is exculpatory and self-serving.  See Marin, 669 F.2d at 84.

### CONCLUSION

For the foregoing reasons, the Court should allow the Government to offer De Los Santos' post-arrest statement as redacted and to preclude Demi Abriham from offering any other portions of the post-arrest statements.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney

By: _____
TODD BLANCHE/KATHERINE LEMIRE
Assistant United States Attorneys
(212) 637-2494/2532

cc:    David Segal, Esq.
       Attorney for Defendant Demi Abriham
       (212)-571-0938 (facsimile)

       Louis R. Aidala, Esq.
       Attorney for Defendant Bryant De Los Santos
       (212) 750-8297 (facsimile)

       Robert Blossner, Esq.
       Attorney for Defendant Pedro Cabrera
       (212)571-0938

# Exhibit A

E-000009

DATE:                    6/27/07

TIME:                    10:43 p.m.

TAPE NUMBER:             E-000009

PARTICIPANTS:            NYPD Detective Peter Shanhai
                         Bryant De Los Santos

ABBREVIATIONS:           (UI)  = UNINTELLIGIBLE

---

| | |
|---|---|
| SHANHAI: | Today's date is 6/27/2007.  The time is now 10:20, 10:43 p.m., uh, present is Peter Shanhai of the Joint Firearms Task Force.  Also present is, state your name. |
| DE LOS SANTOS: | Bryant De Los Santos. |
| SHANHAI: | Okay, uh, Bryant, what's your social security number? |
| DE LOS SANTOS: | I don't know it by heart, you have my i.d. |
| SHANHAI: | Okay, what's your birthday? |
| DE LOS SANTOS: | January 17, '88 |
| SHANHAI: | Okay, you remember this form I showed you before. |
| DE LOS SANTOS: | Yes sir. |
| SHANHAI: | The advice of rights form? You had, you had your, say again? |
| DE LOS SANTOS: | You have the right to remain silent. |
| SHANHAI: | Right, you don't have to read it all, you read it before, right? |
| DE LOS SANTOS: | Anything you can be. |
| SHANHAI: | And you read, and you initialed it after you read it |
| DE LOS SANTOS: | Okay, yes. |
| SHANHAI: | What does that mean? That means you understand it? |
| DE LOS SANTOS: | Uh huh. |

E-000009

| | |
|---|---|
| SHANHAI: | And you signed the bottom of it? |
| DE LOS SANTOS: | Yes, I did. |
| SHANHAI: | Okay, then I witnessed it, right? |
| DE LOS SANTOS: | Yes, sir. |
| SHANHAI: | All right, and then time and date's on it. I'm just going to ask you some questions that we talked about already. |
| DE LOS SANTOS: | Uh hmm. |
| SHANHAI: | Um, uh, about what your involvement with this whole thing is. Okay, so, um, I think when I first spoken to you we started back, this whole thing started yesterday afternoon sometime? |
| DE LOS SANTOS: | Uh hmm. |
| SHANHAI: | You got a phone call, right? |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | All right, who did you get that phone call from? |
| DE LOS SANTOS: | From Tio. |
| SHANHAI | From Tio, okay. How do you know Tio? |
| DE LOS SANTOS: | By a friend of mine that passed away. He's an uncle of a friend of mine who passed away. |
| SHANHAI: | Okay, and Tio, what basically did Tio tell you? |
| DE LOS SANTOS: | he told me that he had some people that had some work. |
| SHANHAI: | Okay, what does that mean to you? |
| DE LOS SANTOS: | Some work? |
| SHANHAI: | What's work? |
| DE LOS SANTOS: | He said, he, he had a job. |
| SHANHAI: | And what's that, what type of job? |
| DE LOS SANTOS: | Like he had somebody who supposedly had 30 bricks and we were going to take it, take it from him. |

E-000009

| | |
|---|---|
| SHANHAI: | Okay. And what was he looking for, why did he call you? |
| DE LOS SANTOS: | He needed me to look out for him. |
| SHANHAI: | Okay. So what, what did you do at that point? |
| DE LOS SANTOS: | Me? I just went to the location he told me with no guns. |
| SHANHAI: | No, no. What did, did you call anybody or did you make any phone calls? |
| DE LOS SANTOS: | Yeah, I made a phone call. |
| SHANHAI: | Okay, who'd you call? |
| DE LOS SANTOS: | I called my friend 300. |
| SHANHAI: | Okay, do you know his first name? |
| DE LOS SANTOS: | Demi. |
| SHANHAI: | Do you know his last name? |
| DE LOS SANTOS: | Nah. |
| SHANHAI: | Okay, and, uh, describe him to me. |
| DE LOS SANTOS: | He's in the other room. |
| SHANHAI: | I know, but describe him to me on tape. |
| DE LOS SANTOS: | He's big, white. |
| SHANHAI: | Big, white. How many pounds do you think. |
| DE LOS SANTOS: | 300. |
| SHANHAI: | 300 pounds. Okay. Uh, and you don't know his last name, right? |
| DE LOS SANTOS: | No. |
| SHANHAI: | Okay, you clicked him up, you called him, or you go see him in person. What happened? |
| DE LOS SANTOS: | I told him what I was informed but he was drunk. It was last night and he was drunk and. |
| SHANHAI: | Okay, you went to see him in person? |
| DE LOS SANTOS: | Yeah, I seen him last night in person. |

E-000009

| | |
|---|---|
| SHANHAI: | Okay, go ahead. |
| DE LOS SANTOS: | He had came from the Club and I told him about it or whatever, he was drunk and then today I told him about it again and then we just went to see the area and then you guys popped out on us. |
| SHANHAI: | Well, you not only went to see the area, but who called the other guys.  Did you call them or did your buddy call them? |
| DE LOS SANTOS: | My buddy called them. |
| SHANHAI: | Meaning Demi or Dami or whatever you call him, right? |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | He called them.  Did he call them in your presence? |
| DE LOS SANTOS: | No. |
| SHANHAI: | No, okay, so what did he say to you then? |
| DE LOS SANTOS: | He told me he was ready. |
| SHANHAI: | Okay, you, and how many people did he get? |
| DE LOS SANTOS: | Two. |
| SHANHAI: | So you got 300, your friend the fat guy, right? |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | And then he got the other two guys? |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | The driver and the other kid? |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | Okay.  And, um, what did, what did you tell everybody in the car what's going to happen? |
| DE LOS SANTOS: | That I had this guy may, callin' my phone, talking about he got somebody with 30 bricks, you know what I'm saying? |
| SHANHAI: | Everybody in the car knew about that? |
| DE LOS SANTOS: | Nah. |

-4-

E-000009

| | |
|---|---|
| SHANHAI: | Or just you and. |
| DE LOS SANTOS: | Nah, just me and 300 knew about that. |
| SHANHAI: | Okay. |
| DE LOS SANTOS: | And he don't really recall it because when I was telling him about it and he was like drunk, he was, it was like the night before. |
| SHANHAI: | Right.  But you spoke to him this morning also about it, right? |
| DE LOS SANTOS: | This morning, yeah. |
| SHANHAI: | And then you got together in the car with the guys? |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | Did you speak to the other two guys or did they know what was happening? |
| DE LOS SANTOS: | Nah, they thought they were dropping me off in my aunt's house. |
| SHANHAI: | Okay. |
| DE LOS SANTOS: | Which was in the Bronx, and then we. |
| SHANHAI: | And then what happened? |
| DE LOS SANTOS: | We, we, we just stopped at a storage place, we were sitting there, we was. |
| SHANHAI: | Well, first of all let's back up a little bit.  Were you in the Bronx originally or were you in Manhattan? |
| DE LOS SANTOS: | We were going originally from Manhattan to the Bronx where my aunt lives at, I was in my grandmother's house. |
| SHANHAI: | In the Bronx.  I mean, I'm sorry.  In Manhattan? |
| DE LOS SANTOS: | Uh huh.  Coming to the Bronx.  On our way to the Bronx we stopped at the storage place for like five minutes (U/I). |
| SHANHAI: | Well, before you got to the storage place you went some place else when you guys came over the bridge.  Describe the route to me how you guys got there. |
| DE LOS SANTOS: | We went over the bridge right there by the auto ocean, (U/I) sin city. |

E-000009

| SHANHAI: | Okay. And then what did you do? |
|---|---|
| DE LOS SANTOS: | We went to 138 and Willis. |
| SHANHAI: | Did you guys make a stop, just before you went into the Bronx? |
| DE LOS SANTOS: | (U/I) Nah, no stops. |
| SHANHAI: | You said you did a u-turn before |
| DE LOS SANTOS: | We did a u-turn because we were going the wrong way and then we stopped at the storage place to see where was it we was going to do. And then five, ten minutes later you all hopped out. |
| SHANHAI: | Okay, did you meet up, when this guy Tio was calling you, he was calling you earlier today wasn't he? |
| DE LOS SANTOS: | Uh hmm. |
| SHANHAI: | And what did he tell you? |
| DE LOS SANTOS: | That everything was ready. |
| SHANHAI: | Okay. |
| DE LOS SANTOS: | That everything. |
| SHANHAI: | Okay, and then he told you to meet him where? |
| DE LOS SANTOS: | At 138 and Willis. |
| SHANHAI: | And did you do that? |
| DE LOS SANTOS: | We drove by there. We didn't actually, like, we was just checking what was going on. |
| SHANHAI: | Well, did you see him at 138th and Willis? |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | Okay, so he, then, from that point did he tell you to do? |
| DE LOS SANTOS: | Nah, he didn't tell us to do nothing. We drove past him. He didn't recognize us because he didn't know what vehicle we was in. |
| SHANHAI: | Oh, gotcha. |
| DE LOS SANTOS: | We just started following him. |

E-000009

| | |
|---|---|
| SHANHAI: | All right. So you guys just started following him? |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | But he knew that you were behind him somewhere, that you guys were behind him somewhere? |
| DE LOS SANTOS: | Yeah, he knew we was behind somewhere, but he didn't know that we were like right behind. He didn't know what car we was in, he didn't know who we was with. |
| SHANHAI: | Okay, so then where do you follow him to? |
| DE LOS SANTOS: | To that place right there where you all arrested me at. |
| SHANHAI: | Now, did he tell you to pull over there or did you make up your mind to pull over? What happened? Why did you guys just stop there? |
| DE LOS SANTOS: | Because he had pulled over and he had told us to hold on. |
| SHANHAI: | So he called you on the, on the Next... phone? |
| DE LOS SANTOS: | He said not to leave. For us to wait right there. |
| SHANHAI: | Okay. |
| DE LOS SANTOS: | That's when he seen what car we was in and all that. |
| SHANHAI: | Did he ask you to come into the place or anything like that? |
| DE LOS SANTOS: | Nah, nah he was just like wait right there (U/I). |
| SHANHAI: | Okay, did you see any other vehicles with him or anything else going on? |
| DE LOS SANTOS: | Yeah, uh, a Pontiac. I seen a Pontiac. |
| SHANHAI: | Okay, and what did you think was going on with that? |
| DE LOS SANTOS: | That's the guy that he was saying that he was with. |
| SHANHAI: | Okay. During that whole time when that, everybody's following each other or turning and, or you're getting phone calls, what was the driver and the other guy doing? |
| DE LOS SANTOS: | Talking on their cell phone with their girls and shit. |

E-000009

| | |
|---|---|
| SHANHAI: | At that point did they have any idea what was going on? |
| DE LOS SANTOS: | They driving me to my aunt's house. |
| SHANHAI: | That's what they thought was happening? |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | So, the bottom line is, Tio, the guy wearing the white shirt, called you. |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | And tried to set this whole thing up, right?  And then you asked your friend. |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | Um, you guys call him 300, he's a bigger guy, his name is Dami, right? |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | And then Dami is the one that recruited the other two guys, or got the other two guys to drive him? |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | Okay.  And you don't know if Dami told them what was going on buy you didn't tell them? |
| DE LOS SANTOS: | I didn't tell them. |
| SHANHAI: | But you told Dami the night before? |
| DE LOS SANTOS: | Yeah when he was drunk. |
| SHANHAI: | And then again you told him |
| DE LOS SANTOS: | When he didn't have his five cents. |
| SHANHAI: | Right, and then you told him this morning again.  Um, so you do recognize that photo as being, um, Tio? |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | Okay, and the other guy in the red shirt, do you know him? |
| DE LOS SANTOS: | That, that's one of his friends. |

-8-

E-000009

| | |
|---|---|
| SHANHAI: | Okay, well, uh, that guy's nickname do you know? |
| DE LOS SANTOS: | Flaco |
| SHANHAI: | Flaco, okay, Allright. All I'm going to ask you to do is, with this, with this photo just initial it for me. |
| DE LOS SANTOS: | What'cha want with my initials? |
| SHANHAI: | Just initial, put your initials right there. That you recognize that photo. |
| DE LOS SANTOS: | So what you can go back and tell him I did that? |
| SHANHAI: | No. I just, the reason I want you to initial. |
| DE LOS SANTOS: | Why do you need my initials to show that. |
| SHANHAI: | Is that I can show. |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | Yeah. All right, I'll write it down. Five years from now am I going to remember that you were the one that told me that after I have a lot of cases. |
| DE LOS SANTOS: | Why five years from now (U/I). |
| SHANHAI: | The only reason is that we recognize. I'm being. I'm exaggerating. But I'm just saying that |
| DE LOS SANTOS: | All right. All right man. |
| SHANHAI: | That you can show that you were the one that, that you were the one that recognized this photo as being Tio. There's a lot of guys that we arrested tonight. We arrested five other guys tonight. You have to understand something. I'll have six photos, you, yours will be included in this. When I go through it, okay, I'll know that, I'll know his real name, okay? You know him as something else. I may not remember that this is Tio, I'll remember his government name. Okay? We work opposite. Guys in the street remember street names, guys in my job remember government names. So that's why I need you to initial it, that you recognize this person as being Tio the guy that was making the phone calls to you, right? |
| DE LOS SANTOS: | Right. |

E-000009

| | |
|---|---|
| SHANHAI: | Okay, um, anything else you need to add that you think it might be important that may come up later on? |
| DE LOS SANTOS: | nuh, uh. |
| SHANHAI: | Sure? |
| DE LOS SANTOS: | Positive. |
| SHANHAI: | Okay, have you ever done any, anything like this before with them? |
| DE LOS SANTOS: | No sir. |
| SHANHAI: | Okay.  Now, from what I understand that you knew that Tio does this type of stuff on his own or with other people, is that true? |
| DE LOS SANTOS: | No, he just looked me up. |
| SHANHAI: | No, no, not, I'm not talking about today. |
| DE LOS SANTOS: | I don't know what he really does.  All I know him by is by a friend of mine that passed away March first (U/I) a long time (U/I). |
| SHANHAI: | So, if you don't know what he really does, and he called you for something, would you be surprised, like |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | Like what the. |
| DE LOS SANTOS: | Yeah, cause (U/I) phone.  He was going through his phone. |
| SHANHAI: | Okay, so he called you and told you about the thirty bricks.  You just accepted it like that right away.  You didn't say, like, I mean like did you have an inkling that he does this stuff?  Not with, I'm not saying with you, I'm saying with. |
| DE LOS SANTOS: | Well, according to what he had told me, since what he had told me sounded so easy which was that he was going to do everything and we wasn't got to do nothing.  I said all right. |
| SHANHAI: | What about the guns or whatever else? |
| DE LOS SANTOS: | Like I said he do everything. Check the car.  Any guns?  No guns, nothing. |

-10-

E-000009

SHANHAI:                Yeah.  No, we didn't get any guns in your car.  The time now is
                        10:54 p.m. the same date.  End of call. End of conversation.

Exhibit B

E-000009

| | |
|---|---|
| DATE: | 6/27/07 |
| TIME: | 10:43 p.m. |
| TAPE NUMBER: | E-000009 |
| PARTICIPANTS: | NYPD Detective Peter Shanhai<br>Bryant De Los Santos |
| ABBREVIATIONS: | (UI) = UNINTELLIGIBLE |

---

SHANHAI:          Today's date is 6/27/2007.  The time is now 10:20, 10:43 p.m., uh, present is Peter Shanhai of the Joint Firearms Task Force.  Also present is, state your name.

DE LOS SANTOS:    Bryant De Los Santos.

SHANHAI:          Okay, uh, Bryant, what's your social security number?

DE LOS SANTOS:    I don't know it by heart, you have my i.d.

SHANHAI:          Okay, what's your birthday?

DE LOS SANTOS:    January 17, '88

SHANHAI:          Okay, you remember this form I showed you before.

DE LOS SANTOS:    Yes sir.

SHANHAI:          The advice of rights form? You had, you had your, say again?

DE LOS SANTOS:    You have the right to remain silent.

SHANHAI:          Right, you don't have to read it all, you read it before, right?

DE LOS SANTOS:    Anything you can be.

SHANHAI:          And you read, and you initialed it after you read it

DE LOS SANTOS:    Okay, yes.

SHANHAI:          What does that mean? That means you understand it?

DE LOS SANTOS:    Uh huh.

-1-

E-000009

| | |
|---|---|
| SHANHAI: | And you signed the bottom of it? |
| DE LOS SANTOS: | Yes, I did. |
| SHANHAI: | Okay, then I witnessed it, right? |
| DE LOS SANTOS: | Yes, sir. |
| SHANHAI: | All right, and then time and date's on it. I'm just going to ask you some questions that we talked about already. |
| DE LOS SANTOS: | Uh hmm. |
| SHANHAI: | Um, uh, about what your involvement with this whole thing is. Okay, so, um, I think when I first spoken to you we started back, this whole thing started yesterday afternoon sometime? |
| DE LOS SANTOS: | Uh hmm. |
| SHANHAI: | You got a phone call, right? |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | All right, who did you get that phone call from? |
| DE LOS SANTOS: | From Tio. |
| SHANHAI | From Tio, okay. How do you know Tio? |
| DE LOS SANTOS: | By a friend of mine that passed away. He's an uncle of a friend of mine who passed away. |
| SHANHAI: | Okay, and Tio, what basically did Tio tell you? |
| DE LOS SANTOS: | he told me that he had some people that had some work. |
| SHANHAI: | Okay, what does that mean to you? |
| DE LOS SANTOS: | Some work? |
| SHANHAI: | What's work? |
| DE LOS SANTOS: | He said, he, he had a job. |
| SHANHAI: | And what's that, what type of job? |
| DE LOS SANTOS: | Like he had somebody who supposedly had 30 bricks and we were going to take it, take it from him. |

E-000009

| | |
|---|---|
| SHANHAI: | Okay. And what was he looking for, why did he call you? |
| DE LOS SANTOS: | He needed me to look out for him. |
| SHANHAI: | Okay. So what, what did you do at that point? |
| DE LOS SANTOS: | Me? I just went to the location he told me with no guns. |
| SHANHAI: | No, no. What did, did you call anybody or did you make any phone calls? |
| DE LOS SANTOS: | Yeah, I made a phone call. |
| SHANHAI: | Okay, who'd you call? |
| DE LOS SANTOS: | I called my friend ~~300.~~ |
| ~~SHANHAI:~~ | ~~Okay, do you know his first name?~~ |
| ~~DE LOS SANTOS:~~ | ~~Demi.~~ |
| ~~SHANHAI:~~ | ~~Do you know his last name?~~ |
| ~~DE LOS SANTOS:~~ | ~~Nah.~~ |
| ~~SHANHAI:~~ | ~~Okay, and, uh, describe him to me.~~ |
| ~~DE LOS SANTOS:~~ | ~~He's in the other room.~~ |
| ~~SHANHAI:~~ | ~~I know, but describe him to me on tape.~~ |
| ~~DE LOS SANTOS:~~ | ~~He's big, white.~~ |
| ~~SHANHAI:~~ | ~~Big, white. How many pounds do you think.~~ |
| ~~DE LOS SANTOS:~~ | ~~300.~~ |
| ~~SHANHAI:~~ | ~~300 pounds. Okay. Uh, and you don't know his last name, right?~~ |
| ~~DE LOS SANTOS:~~ | ~~No.~~ |
| SHANHAI: | Okay, you clicked him up, you called him, or you go see him in person. What happened? |
| DE LOS SANTOS: | I told him what I was informed but he was drunk. It was last night and he was drunk and. |
| SHANHAI: | Okay, you went to see him in person? |

-3-

E-000009

| | |
|---|---|
| DE LOS SANTOS: | Yeah, I seen him last night in person. |
| SHANHAI: | Okay, go ahead. |
| DE LOS SANTOS: | He had came from the Club and I told him about it or whatever, he was drunk and then today I told him about it again and then we just went to see the area and then you guys popped out on us. |
| SHANHAI: | Well, you not only went to see the area, but who called the other guys. Did you call them or did your buddy call them? |
| DE LOS SANTOS: | My buddy called them. |
| ~~SHANHAI:~~ | ~~Meaning Demi or Dami or whatever you call him, right?~~ |
| ~~DE LOS SANTOS:~~ | ~~Uh huh.~~ |
| SHANHAI: | He called them. Did he call them in your presence? |
| DE LOS SANTOS: | No. |
| SHANHAI: | No, okay, so what did he say to you then? |
| DE LOS SANTOS: | He told me he was ready. |
| SHANHAI: | Okay, you, and how many people did he get? |
| DE LOS SANTOS: | Two. |
| ~~SHANHAI:~~ | ~~So you got 300, your friend the fat guy, right?~~ |
| ~~DE LOS SANTOS:~~ | ~~Uh huh.~~ |
| SHANHAI: | And then he got the other two guys? |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | The driver and the other kid? |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | Okay. And, um, what did, what did you tell everybody in the car what's going to happen? |
| DE LOS SANTOS: | That I had this guy may, callin' my phone, talking about he got somebody with 30 bricks, you know what I'm saying? |
| ~~SHANHAI:~~ | ~~Everybody in the car knew about that?~~ |

-4-

E-000009

| | |
|---|---|
| ~~DE LOS SANTOS:~~ | ~~Nah.~~ |
| ~~SHANHAI:~~ | ~~Or just you and.~~ |
| ~~DE LOS SANTOS:~~ | ~~Nah, just me and 300 knew about that.~~ |
| SHANHAI: | Okay. |
| DE LOS SANTOS: | And he don't really recall it because when I was telling him about it and he was like drunk, he was, it was like the night before. |
| SHANHAI: | Right.  But you spoke to him this morning also about it, right? |
| DE LOS SANTOS: | This morning, yeah. |
| SHANHAI: | And then you got together in the car with the guys? |
| DE LOS SANTOS: | Uh huh. |
| ~~SHANHAI:~~ | ~~Did you speak to the other two guys or did they know what was happening?~~ |
| ~~DE LOS SANTOS:~~ | ~~Nah, they thought they were dropping me off in my aunt's house.~~ |
| ~~SHANHAI:~~ | ~~Okay.~~ |
| ~~DE LOS SANTOS:~~ | ~~Which was in the Bronx, and then we.~~ |
| SHANHAI: | And then what happened? |
| DE LOS SANTOS: | We, we, we just stopped at a storage place, we were sitting there, we was. |
| SHANHAI: | Well, first of all let's back up a little bit.  Were you in the Bronx originally or were you in Manhattan? |
| DE LOS SANTOS: | We were going originally from Manhattan to the Bronx where my aunt lives at, I was in my grandmother's house. |
| SHANHAI: | In the Bronx.  I mean, I'm sorry.  In Manhattan? |
| DE LOS SANTOS: | Uh huh.  Coming to the Bronx.  On our way to the Bronx we stopped at the storage place for like five minutes (U/I). |
| SHANHAI: | Well, before you got to the storage place you went some place else when you guys came over the bridge.  Describe the route to me how you guys got there. |

E-000009

| | |
|---|---|
| DE LOS SANTOS: | We went over the bridge right there by the auto ocean, (U/I) sin city. |
| SHANHAI: | Okay.  And then what did you do? |
| DE LOS SANTOS: | We went to 138 and Willis. |
| SHANHAI: | Did you guys make a stop, just before you went into the Bronx? |
| DE LOS SANTOS: | (U/I) Nah, no stops. |
| SHANHAI: | You said you did a u-turn before |
| DE LOS SANTOS: | We did a u-turn because we were going the wrong way and then we stopped at the storage place to see where was it we was going to do. And then five, ten minutes later you all hopped out. |
| SHANHAI: | Okay, did you meet up, when this guy Tio was calling you, he was calling you earlier today wasn't he? |
| DE LOS SANTOS: | Uh hmm. |
| SHANHAI: | And what did he tell you? |
| DE LOS SANTOS: | That everything was ready. |
| SHANHAI: | Okay. |
| DE LOS SANTOS: | That everything. |
| SHANHAI: | Okay, and then he told you to meet him where? |
| DE LOS SANTOS: | At 138 and Willis. |
| SHANHAI: | And did you do that? |
| DE LOS SANTOS: | We drove by there.  We didn't actually, like, we was just checking what was going on. |
| SHANHAI: | Well, did you see him at 138th and Willis? |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | Okay, so he, then, from that point did he tell you to do? |
| DE LOS SANTOS: | Nah, he didn't tell us to do nothing.  We drove past him.  He didn't recognize us because he didn't know what vehicle we was in. |
| SHANHAI: | Oh, gotcha. |

E-000009

| | |
|---|---|
| DE LOS SANTOS: | We just started following him. |
| SHANHAI: | All right. So you guys just started following him? |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | But he knew that you were behind him somewhere, that you guys were behind him somewhere? |
| DE LOS SANTOS: | Yeah, he knew we was behind somewhere, but he didn't know that we were like right behind. He didn't know what car we was in, he didn't know who we was with. |
| SHANHAI: | Okay, so then where do you follow him to? |
| DE LOS SANTOS: | To that place right there where you all arrested me at. |
| SHANHAI: | Now, did he tell you to pull over there or did you make up your mind to pull over? What happened? Why did you guys just stop there? |
| DE LOS SANTOS: | Because he had pulled over and he had told us to hold on. |
| SHANHAI: | So he called you on the, on the Next... phone? |
| DE LOS SANTOS: | He said not to leave. For us to wait right there. |
| SHANHAI: | Okay. |
| DE LOS SANTOS: | That's when he seen what car we was in and all that. |
| SHANHAI: | Did he ask you to come into the place or anything like that? |
| DE LOS SANTOS: | Nah, nah he was just like wait right there (U/I). |
| SHANHAI: | Okay, did you see any other vehicles with him or anything else going on? |
| DE LOS SANTOS: | Yeah, uh, a Pontiac. I seen a Pontiac. |
| SHANHAI: | Okay, and what did you think was going on with that? |
| DE LOS SANTOS: | That's the guy that he was saying that he was with. |
| ~~SHANHAI:~~ | ~~Okay. During that whole time when that, everybody's following each other or turning and, or you're getting phone calls, what was the driver and the other guy doing?~~ |

E-000009

| | |
|---|---|
| DE LOS SANTOS: | Talking on their cell phone with their girls and shit. |
| SHANHAI: | At that point did they have any idea what was going on? |
| DE LOS SANTOS: | They driving me to my aunt's house. |
| SHANHAI: | That's what they thought was happening? |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | So, the bottom line is, Tio, the guy wearing the white shirt, called you. |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | And tried to set this whole thing up, right?  And then you asked your friend. |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | Um, you guys call him 300, he's a bigger guy, his name is Dami, right? |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | And then Dami is the one that recruited the other two guys, or got the other two guys to drive him? |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | Okay.  And you don't know if Dami told them what was going on buy you didn't tell them? |
| DE LOS SANTOS: | I didn't tell them. |
| SHANHAI: | But you told Dami the night before? |
| DE LOS SANTOS: | Yeah when he was drunk. |
| SHANHAI: | And then again you told him |
| DE LOS SANTOS: | When he didn't have his five cents. |
| SHANHAI: | Right, and then you told him this morning again.  Um, so you do recognize that photo as being, um, Tio? |
| DE LOS SANTOS: | Uh huh. |
| SHANHAI: | Okay, and the other guy in the red shirt, do you know him? |

E-000009

| | |
|---|---|
| DE LOS SANTOS: | That, that's one of his friends. |
| SHANHAI: | Okay, well, uh, that guy's nickname do you know? |
| DE LOS SANTOS: | Flaco |
| SHANHAI: | Flaco, okay, Allright.  All I'm going to ask you to do is, with this, with this photo just initial it for me. |
| DE LOS SANTOS: | What'cha want with my initials? |
| SHANHAI: | Just initial, put your initials right there.  That you recognize that photo. |
| DE LOS SANTOS: | So what you can go back and tell him I did that? |
| SHANHAI: | No.  I just, the reason I want you to initial. |
| DE LOS SANTOS: | Why do you need my initials to show that. |
| SHANHAI: | Is that I can show. |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | Yeah.  All right, I'll write it down.  Five years from now am I going to remember that you were the one that told me that after I have a lot of cases. |
| DE LOS SANTOS: | Why five years from now (U/I). |
| SHANHAI: | The only reason is that we recognize.  I'm being.  I'm exaggerating.  But I'm just saying that |
| DE LOS SANTOS: | All right.  All right man. |
| SHANHAI: | That you can show that you were the one that, that you were the one that recognized this photo as being Tio.  There's a lot of guys that we arrested tonight.  We arrested five other guys tonight.  You have to understand something.  I'll have six photos, you, yours will be included in this.  When I go through it, okay, I'll know that, I'll know his real name, okay?  You know him as something else.  I may not remember that this is Tio, I'll remember his government name.  Okay?  We work opposite.  Guys in the street remember street names, guys in my job remember government names.  So that's why I need you to initial it, that you recognize this person as being Tio the guy that was making the phone calls to you, right? |

-9-

E-000009

| | |
|---|---|
| DE LOS SANTOS: | Right. |
| SHANHAI: | Okay, um, anything else you need to add that you think it might be important that may come up later on? |
| DE LOS SANTOS: | nuh, uh. |
| SHANHAI: | Sure? |
| DE LOS SANTOS: | Positive. |
| SHANHAI: | Okay, have you ever done any, anything like this before with them? |
| DE LOS SANTOS: | No sir. |
| SHANHAI: | Okay. Now, from what I understand that you knew that Tio does this type of stuff on his own or with other people, is that true? |
| DE LOS SANTOS: | No, he just looked me up. |
| SHANHAI: | No, no, not, I'm not talking about today. |
| DE LOS SANTOS: | I don't know what he really does. All I know him by is by a friend of mine that passed away March first (U/I) a long time (U/I). |
| SHANHAI: | So, if you don't know what he really does, and he called you for something, would you be surprised, like |
| DE LOS SANTOS: | Yeah. |
| SHANHAI: | Like what the. |
| DE LOS SANTOS: | Yeah, cause (U/I) phone. He was going through his phone. |
| SHANHAI: | Okay, so he called you and told you about the thirty bricks. You just accepted it like that right away. You didn't say, like, I mean like did you have an inkling that he does this stuff? Not with, I'm not saying with you, I'm saying with. |
| DE LOS SANTOS: | Well, according to what he had told me, since what he had told me sounded so easy which was that he was going to do everything and we wasn't got to do nothing. I said all right. |
| SHANHAI: | What about the guns or whatever else? |
| DE LOS SANTOS: | Like I said he do everything. Check the car. Any guns? No guns, nothign. |

E-000009

SHANHAI:            Yeah.  No, we didn't get any guns in your car.  The time now is
                   10:54 p.m. the same date.  End of call. End of conversation.

Exhibit C

E-000010

DATE:                     6/27/07

TIME:                     10:28 pm

TAPE NUMBER:              E-000010

PARTICIPANTS:

ABBREVIATIONS:            (UI)  = UNINTELLIGIBLE

---

SHANHAI:          I don't know if the tape was on normal speed or what.  I'm just
                  going to repeat what I just said, okay.  Today's date is 6/27 of
                  2007.  The time now is 10:28 p.m.  Present is Peter Shanhai from
                  the Joint Firearms Task Force and Michael Pardin of the Joint
                  Firearms Task Force.  We have in custody Demi Abraham, um,
                  who we took into custody earlier today for conspiracy for, to, a
                  commit a robbery.  Um, Demi what is your social security number.

ABRAHAM:          (U/I) 99-62-1803.

SHANHAI:          And your date of birth Demi?

ABRAHAM:          8/27/78.

SHANHAI:          Okay, Demi do you remember this form.  This form is called the,
                  um, advice of rights and waiver.

ABRAHAM:          Yes.

SHANHAI:          Okay.  Do you remember somebody reading this to you?

ABRAHAM:          Yes.

SHANHAI:          And did you write yes and initial it?

ABRAHAM:          Yes.

-1-

E-000010

| | |
|---|---|
| SHANHAI: | Did that mean that you understood every questions? |
| ABRAHAM: | Yes. |
| SHANHAI: | Is this your signature? |
| ABRAHAM: | Yes. |
| SHANHAI: | On the bottom, ok.  And then somebody witnessed it and signed it, correct? |
| ABRAHAM: | Yes. |
| SHANHAI: | Okay, Demi.  Demi, I just want to talk to you about an incident that from what I understand from what you're telling me, um, apparently started yesterday, um, with a phone call.  Is that the truth? |
| ABRAHAM: | Nah, it was not with a phone call. |
| SHANHAI: | Okay, so tell me what it was about then. |
| ABRAHAM: | Yesterday I came home. |
| SHANHAI: | Uh huh. |
| ABRAHAM: | I was in front of the building. |
| SHANHAI: | In front of your own building, your residence? |
| ABRAHAM: | Yes.  I walked, by the time I got to the front of my building I saw Bryant.  Then I came in (U/I). |
| SHANHAI: | Do you know Bryant's last name? |
| ABRAHAM: | Rosario. |
| SHANHAI: | Okay, describe him to me. |
| ABRAHAM: | Describe who, Bryant? |
| SHANHAI: | Bryant, yeah. |

-2-

E-000010

| | |
|---|---|
| ABRAHAM: | Skinny, um, a little dark skin, braids. |
| SHANHAI: | What's his nationality? |
| ABRAHAM: | Dominican. |
| SHANHAI: | Okay, go ahead from there. |
| ABRAHAM: | Okay, last night I came home, I was drinking. I came home, when I got to the front of the building I saw Bryant. Bryant tells me yo D, um, yo D my uncle he got, he got a scheme or some shit and I'm like you're running, don't, don't fucking get into nothing stupid. |
| SHANHAI: | Okay, lets slow down for a minute. What do you know his uncle to be involved in in the past? |
| ABRAHAM: | I've heard, I've heard that Bryant said before like, oh, um, my uncle he being doing schemes and shit but I've never, I, since I don't do none of that stuff I never got involved with any of that. |
| SHANHAI: | That's understandable. But prior to that you had told me that, not pertaining to you what a scheme might be, but for his uncle what could a scheme mean. |
| ABRAHAM: | I don't know, 'cause I don't know his uncle. |
| SHANHAI: | Okay. Because you had told me. |
| ABRAHAM: | And since I'm not into that, that didn't interest me B. |
| SHANHAI: | Okay. Did you tell me before that you think that his uncle was into robberies? |
| ABRAHAM: | Yeah, I think, I think that's the uncle that he was telling me about. |
| SHANHAI: | Okay. |
| ABRAHAM: | I never met his uncle, I don't know. |
| SHANHAI: | Okay, but a scheme to his uncle could mean a robbery? |
| ABRAHAM: | It could, yes. |

E-000010

| SHANHAI: | Okay. So, go ahead what else from there. |
|---|---|
| ABRAHAM: | So I was like alright whatever Bryant, I'm drunk, I'm going home. |
| SHANHAI: | Uh huh. |
| ABRAHAM: | So he was like alright, so, um, I didn't pay no mind to him 'cause Bryant's always saying stupid shit like that anyway. You know what I'm saying? I never believe him, he'll tell you himself. |
| SHANHAI: | Okay. |
| ABRAHAM: | He's always fucking around, lying and I'm like ah, whatever. He's just a kid, I'm a grown man, you know what I'm saying. But I saw Bryant, I saw Bryant born and raised in the block, you know what I'm saying. So me as an older person I try to look out for him. Bryant don't do this, don't do that. He's only 18 years old, he's a knuckle head, been locked up a few times for stupid shit. |
| SHANHAI: | Uh huh. |
| ABRAHAM: | And Bryant don't, you know what I'm saying, it's not worth it, don't do this, don't do that. I mean I'm always giving him advice. |
| SHANHAI: | Okay. |
| ABRAHAM: | So yesterday he told me that shit. What it was for I don't know but he did tell me yes that his uncle was doing a scheme. |
| SHANHAI: | Okay. And what happened this morning. |
| ABRAHAM: | Me being drunk, I'm like whatever Bryant, you know what I'm saying. |
| SHANHAI: | Okay. |
| ABRAHAM: | This morning Pete, uh, Pete called me and he's like yo, what's up nigger (UI). |
| SHANHAI: | Who's Pete, now which one is Pete? |
| ABRAHAM: | Pete? The owner of the Range. |

-4-

E-000010

| | |
|---|---|
| SHANHAI: | The owner of |
| ABRAHAM: | The Range Rover. |
| SHANHAI: | The Range Rover, Okay, he called you. |
| ABRAHAM: | And I'm like what's up nigger and he's like nah, just chilling, man what you're doing? And I'm like nothing, I'm in my house, I just finished eating. So he was like ah, come down nigger, lets be, lets go for a ride? I'm like alright, whatever. But we always do that, we, we go for a ride or whatever. |
| SHANHAI: | Okay. |
| ABRAHAM: | So, um, I'm like so, I get dressed I come downstairs. When I come downstairs to meet up with him I see Bryant, I'm like yo Bryant what's doin'? What you doing? He's like yo, um, I, want to, I want to meet up with my uncle and my uncle is going to tell me what the fuck is going on. I'm like alright, so let me know, uh, you want me to drop you off or I'll give you money for a cab. He's like nah, take me over there so I can see what the fuck it is. I'm like, yo Bryant listen, I'm with my friend, I'm with my friend, um, I, I can't have him drive you around but we'll drop you off and we'll keep going if you want but we can't bring you back. |
| SHANHAI: | Uh huh. |
| ABRAHAM: | That's what I told him and he was like alright, whatever, just take me. So we, we went to 138 and some, I don't, I don't remember the Ave, I think it was around 3rd Ave, I'm not sure. So that being close to my house I was like fuck it, I'll take him, you know what I'm saying. Bryant I see him like a little brother. I, I took him. So we take him, so when we got there the guy, the guy was like yo, I hear the guy hit him on the radio like yo, follow me a couple of blocks away. So I'm like alright. Um, Bryant, I'm like Bryant, get the fuck out right now, just get into the car with him. He was like nah, um, just follow 'cause he already started moving, the guy already started to move. So I was like alright, yo, so take him. So we went just a couple of blocks away, we went to that, in front of that storage. |
| SHANHAI: | Uh huh. |

E-000010

| | |
|---|---|
| ABRAHAM: | So there's a storage that his uncle's like, um, we pull up behind him, his uncle is like yo, pull up in front of us. And so we're like alright, so we went like a couple of yards up and we pulled up where you guys saw us and we pulled up. So I'm like Bryant get the fuck out. Then he, his uncle hit's him up and he's like hold up, wait right there. So I'm like Bryant we gotta go man, I don't want to have people waiting. |
| SHANHAI: | Uh huh. |
| ABRAHAM: | I don't want to have people waiting. Um, get out if you're going to get out, we're going to leave, lets leave. So he's like hold on, hold on and after that he said hold on, (UI) we're there for a little bit that's when you guys showed up. |
| SHANHAI: | Okay. |
| ABRAHAM: | Now as far as that thing I don't have nothing to do with that officer. If you guys have your investigation. |
| SHANHAI: | Uh huh. |
| ABRAHAM: | Then you guys would know that I don't have nothing to do with that, you know what I'm saying. I'm telling you the God honest truth. |
| SHANHAI: | Right. So, did Bryant at any time tell you what this was going to be for? |
| ABRAHAM: | No, no. Not at all. |
| SHANHAI: | So he just indicated to you that it was going to be scheme. |
| ABRAHAM: | A scheme 'cause he didn't really know either, you know what I'm saying. His uncle was (UI). |
| SHANHAI: | Hmm. Alright, anything else you think is important for me to know before I end it, end this conversation? |
| ABRAHAM: | That's about if officer. |
| SHANHAI: | Alright. The time now is 10:34. |

-6-