

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 7, 2008

**By ECF & Facsimile**

Honorable Harold Baer
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, New York 10007

      Re:   **United States v. Bryant De Los Santos, et al.**
             **S1 07 Cr. 699 (HB)**

Dear Judge Baer:

     The Government respectfully submits this letter in advance of trial, to advise the Court of certain evidence the Government seeks to admit against the defendants at trial. Specifically, statements made against penal interest by an unindicted co-conspirator who is unavailable to testify at trial.

    A.    **Statements Against Penal Interest/Statements to a Co-Conspirator**

     At trial, the Government intends to introduce a recorded telephone call between Din Celaj, an unindicted co-conspirator, and an unknown male ("U/M").[1] During this telephone call, Din Celaj discusses the robbery, and tells the U/M, among other things, that he attempted to commit the robbery because he trusted "Pete," referring to defendant Pedro Cabrera. (A copy of the transcript of this telephone call is attached as Exhibit A.) Celaj also admits, on this telephone call, that he and Cabrera "fucked up" and that the "number was outrageous," meaning the 25 kilograms of cocaine that they were going to steal. (See Ex. A at 1, 3, 4.) This telephone call will be admissible, either as nonhearsay because they are "statement[s] by a co-conspirator of a party during the course and in furtherance of the conspiracy" (Rule 801(d)(2)(E)) or as

---

[1] This telephone call was recorded pursuant to a Court-authorized wire-tap of Din Celaj's cellular telephone.

Hon. Harold Baer
January 7, 2008
Page 2

exceptions to the hearsay rule because they are statements against penal interest (Rule 804(b)(3)). In particular, the statements that the Government intends to elicit are statements made by Din Celaj, a co-conspirator, to an unidentified male, discussing the robbery. Further, Din Celaj, who is under indictment in a separate case, has asserted his Fifth Amendment right not to testify. (See Exhibit B). The Government believes that, both the contents of the statements themselves, as well as the fact that Din Celaj is an unavailable witness, fully satisfies the requirements of either or both of these hearsay rules.

    1.    **Rule 801(d)(2)(E)**

Rule 801(d)(2)(E) provides that a statement is "not hearsay if -- [it] is offered against a party and is -- a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." To admit a statement pursuant to this rule, a district court must find two preliminary facts: first, that a conspiracy including the defendant and the declarant existed; and, second, that the statement was made during the course and in furtherance of that conspiracy. Bourjaily v. United States, 483 U.S. 171, 175 (1987); United States v. Gigante, 166 F.3d 75, 82 (2d Cir. 1999). A district court may consider the purported hearsay statement itself in assessing the existence of a conspiracy and whether the defendant and declarant were members therein. See Fed. R. Evid. 104(a); Bourjaily, 483 U.S. at 180-81; Gigante, 166 F.3d at 82. In addition, while "there must be some independent corroborating evidence of the defendant's participation in the conspiracy," United States v. Tellier, 83 F.3d 578, 580 (2d Cir. 1996), that independent evidence need not itself be admissible. See Fed. R. Evid. 104(a); Bourjaily, 483 U.S. at 178. The objective of the joint venture between the defendant and the declarant "need not be the crime charged in the indictment," United States v. Russo, 302 F.3d 37, 45 (2d Cir. 2002), cert. denied, 537 U.S. 1112 (2003), nor must it "be criminal at all," id. "Admissibility depends on the nature of the statement offered - in particular what objective it sought to advance-and whether the defendant was jointly engaged with the declarant in a conspiracy seeking that objective." Id. at 46.

The "independent" corroborating proof of the defendant's participation in the conspiracy may be "totally circumstantial," United States v. Terry, 702 F.2d 299, 320 (2d Cir. 1983) (citation omitted), and the court must view the

Hon. Harold Baer
January 7, 2008
Page 3

evidence as a whole rather than consider individual items of independent proof in isolation, <u>United States</u> v. <u>Di Palermo</u>, 606 F.2d 17, 22 (2d Cir. 1979). Once a conspiracy has been proved to exist, the evidence needed "to link another defendant with it need not be overwhelming." <u>United States</u> v. <u>Provenzano</u>, 615 F.2d 37, 45 (2d Cir. 1980) (citation omitted). The requirement that the challenged statement be "in furtherance of" the conspiracy is satisfied if the statement's objective is "designed to promote or facilitate achievement of the goals of the conspiracy." <u>United States</u> v. <u>Rivera</u>, 22 F.3d 430, 436 (2d Cir. 1994). Statements between coconspirators that "provide reassurance, serve to maintain trust and cohesiveness among them, or inform each other of the current status of the conspiracy," further the conspiracy, <u>United States</u> v. <u>Simmons</u>, 923 F.2d 934, 945 (2d Cir. 1991), as do statements "that apprise a coconspirator of the progress of the conspiracy," <u>United States</u> v. <u>Rahme</u>, 813 F.2d 31, 36 ( 2d Cir. 1987). These prerequisites need be proved only by a preponderance of the evidence. <u>United States</u> v. <u>Orena</u>, 32 F.3d 704, 711 (2d Cir. 1994).

    **2.**    **Rule 804(b)(3)**

Rule 804(b)(3) provides an exception to the hearsay rule for out of court statements where (1) the declarant is "unavailable as a witness" and (2) the statement at the time of its making so far tended to subject the declarant to criminal liability that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. Fed. R. Evid. 804(b)(3); <u>United States</u> v. <u>Tropeano</u>, 252 F.3d 653, 658 (2d Cir. 2001). . For the 804(b)(3) exception to apply, "the proponent must show (1) that the declarant is unavailable as a witness, (2) that the statement is sufficiently reliable to warrant an inference that a reasonable man in the declarant's position would not have made the statement unless he believed it to be true, and (3) that corroborating circumstances clearly indicate the trustworthiness of the statement." <u>United States</u> v. <u>Katsougrakis</u>, 715 F.2d 769, 775 (2d Cir. 1983) (internal quotations and modifications omitted). "Rule 804(b)(3) is founded on the commonsense notion that reasonable people, even reasonable people who are not especially honest, tend not to make self-inculpatory statements unless they believe them to be true." <u>Williamson</u> v. <u>United States</u>, 512 U.S. 594, 599 (1994).

In criminal cases, out-of-court statements must also satisfy the Confrontation Clause of the Sixth Amendment, which requires that nontestimonial statements must either fall within a

Hon. Harold Baer
January 7, 2008
Page 4

"firmly rooted hearsay exception" or possess "particularized guarantees of trustworthiness." Lilly v. Virginia, 527 U.S. 116, 124-25 (1999) (plurality opinion) (quoting Ohio v. Roberts, 448 U.S. 56, 66 (1980)); cf. Crawford v. Washington, 124 S. Ct. 1354, 1374 (2004) (reaffirming Roberts test for nontestimonial out-of-court statements). The Second Circuit has never explicitly held that the "statements against interest" exception of Rule 804(b)(3) qualifies as a "firmly rooted" hearsay exception, and so such statements are examined to see whether they possess sufficient "guarantees of trustworthiness" for admission. See, e.g., United States v. Matthews, 20 F. 3d 538, 545 (2d Cir. 1994). The Second Circuit has repeatedly held that inculpatory statements to "allies" (generally girlfriends or co-conspirators) that simultaneously inculpate the non-declarant defendant - are admissible at trial against the defendant. See United States v. Sasso, 59 F.3d 341, 348-49 (2d Cir. 1995) (declarant's pre-arrest statements to female ally, which implicated himself and defendant equally in the crime, were admissible against defendant); United States v. Matthews, 20 F.3d 538, 545-46 (2d Cir. 1994) (same); United States v. Bakhtiar, 994 F.2d at 977-78 (declarant's recorded statements to co-conspirator-turned-CI in which he tried to come up with cover story to explain large sums of money that defendant had wired to declarant and CI over the course of the conspiracy were admissible against defendant); cf. United States v. Bryce, 208 F.3d 346, 351 (2d Cir. 2000) (affirming admission under residual hearsay exception of statements recorded on wiretap by declarant implicating himself and defendant in narcotics conspiracy because declarant did not know of recording and had no motive to lie).

     The Government can represent that Din Celaj is "unavailable" because he has been subpoenaed and has informed the Government, through counsel, that he will not testify but will rather invoke their right against self-incrimination. See United States v. Williams, 927 F.2d 95, 98 (2d Cir. 1991) (holding that district court properly found co-conspirators to be unavailable where it accepted the prosecution's representations that it had contacted and been informed by attorneys for each of the co-conspirators that they all would invoke their Fifth Amendment privilege if called as witnesses, and noting that a ruling of

Hon. Harold Baer
January 7, 2008
Page 5

unavailability under Rule 804(a)(1) "can be made, as in the instant case, with or without the witness being haled into court.").

                                      Respectfully submitted,

                                      MICHAEL J. GARCIA
                                      United States Attorney

                    By: _____
                         Todd Blanche/Katherine Lemire
                         Assistant United States Attorneys
                         Tel. No.: (212) 637-2494/2532

cc:    David Segal, Esq.
       Attorney for Defendant Demi Abriham
       (212)-571-0938 (facsimile)

       Louis R. Aidala, Esq.
       Attorney for Defendant Bryant De Los Santos
       (212) 750-8297 (facsimile)

       Robert Blossner, Esq.
       Attorney for Defendant Pedro Cabrera
       (212)571-0938

# Exhibit A

| | |
|---|---|
| DATE: | JUNE 29, 2007 |
| TIME: | 4:26:57 |
| PARTICIPANTS: | DIN CELAJ<br>UNIDENTIFIED FEMALE (U/F)<br>UNIDENTIFIED MALE (U/M) |
| ABBREVIATIONS: | (U/I) = UNINTELLIGIBLE |

| | |
|---|---|
| U/M | Yo, what up son. Yo, what's the deal man. Yo. I'm so fricking disappointed with you my nigger. |
| CELAJ | What happened? |
| | Huh? |
| CELAJ | What happened now? |
| U/M | U/I how did, what do you mean what happened now nigger. Didn't you tell me yo, why you bugging, why you doing this, why you doing that. Why you going to something that you don't know, that you don't know these niggers from Jack Diddly man. |
| CELAJ | 'Cause of Pete, my nigger. |
| U/M | I know you did it 'cause of Pete but you ain't, you ain't know the, you ain't know the sketch nigger. When you, when we go, when you, when we went, my nigger, you knew everything. You went there knowing nothing. |
| CELAJ | I know, (laughing) you a funny nigger. You knew everything. You went there knowing nothing. |
| U/M | You know what I'm saying, you know what I'm saying is true. |
| CELAJ | Yeah, yeah, (UI). |
| U/M | Even my, even my girl is, even my girl is mad you my nigger. She said usually that nigger knows everything before he goes in, man. When I told her about the first day and then the second time my girl was saying damn, that nigger is meticulous. |
| CELAJ | Yeah. |
| U/M | You, you, you lost, you lost points right there, you know lost points. |
| CELAJ | I get, I bet you I. |
| U/M | You get deductions for that, come on man. I was like man what you. |
| CELAJ | I bet you, I bet you give me two weeks I get it all back. |

2

| | |
|---|---|
| U/M | Oh, no I know that. I'm not, I'm not jerking that, I'm not jerking that at all. I'm not stressing at all. My, my, my disappointment with you is that you went in there knowing nothing man. Come on, how you gonna go in there knowing nothing. |
| CELAJ | I know, I know, I know. I fucked up, I know. |
| U/M | Yeah, but I, I, I liked that slick shit you did when you left. I already knew, I knew they were going to be laying in the cut for you. |
| CELAJ | Huh? |
| U/M | I knew that, that, that (UI) was going to be laying in the cut for you. |
| CELAJ | Oh my nigger you had to see how I (UI). |
| | (Laughing) |
| CELAJ | (UI) my uncle was there right. My uncle goes make a right, make a left I'm parked on the corner but I didn't even go there. I seen a taxi, I said "Cheew", I said go, I gave the nigger a hundred dollar bill I said take me nigger. He took me three blocks, I jumped out on him. |
| U/M | (Laughing) Yo hold up, hold up, hold up wait. Wait, wait, wait, somebody wants to talk to you, hold on. |
| U/F | Yo. |
| CELAJ | Yo. |
| U/F | Like what is up with that? |
| CELAJ | I don't know what I, I don't know, you know what it is putting my trust in people. |
| U/F | Goodness gracious. |
| CELAJ | And I don't usually do that. |
| U/F | Had this man stressed for how long, I was like ah man Diesal I just met him and I just, you know, I like him and he's a nice guy and he wouldn't be around for long. That's fucked up. |
| CELAJ | And you know what it is I fucked up, I listened to my man and, and, you know, he didn't know. |
| U/F | Can't do that. |
| CELAJ | So we both, we both fucked up. |

3

| | |
|---|---|
| U/F | Nah, come on, you got to be smarter than that. You've been in this game for (UI). |
| CELAJ | (UI) I know that but I figured I, I figured that, I figure I fuck with Pete, I know Pete official so that's Pete's people so I said fuck it. It is what it is. I fucked up, I mean, me and Pete fucked up so we really got nobody to blame. |
| U/F | Well, now you know for the next time. |
| CELAJ | Oh, ain't gonna be no next time. |
| U/F | Well, okay. |
| CELAJ | (UI) |
| U/F | Later. |
| U/M | Ain't no next on that. |
| CELAJ | Hell no. |
| U/M | Nah, ain't no next on that dude. |
| CELAJ | (U/I). |
| U/M | We, we, we yo, you do, you do the ones we know. |
| CELAJ | Yeah that's it. |
| U/M | 'cause you know everything, bro, you know everything. |
| CELAJ | I know (UI). |
| U/M | (UI). |
| CELAJ | I know, I know, everybody, everybody's getting on me. Everybody's like yo, you played yourself, you fucked up. |
| U/M | I don't think, I don't think you played, I mean, it was, the, the, the number was retarded and I see what you, I see, I see, I see why you, why you went out. |
| CELAJ | Yeah the number was outrageous. |
| U/M | It's just, it's just, it's just look at, look at, look at with our girl, look at with our girl. You knew everything. The color, you know, we had everything. |
| CELAJ | Yeah. |

4

| | |
|---|---|
| U/M | You know what I'm saying. This is, this is (UI) candy from a baby. |
| CELAJ | (UI). |
| U/M | This was like you walked in blindfolded dude. I was like how the fuck did he walk in blindfolded. |
| CELAJ | Yeah, I know. I should, I should have never did that shit, you're absolutely right. |
| U/M | But that's alright man, (UI) you're out, you're home, you're out. |
| CELAJ | What do you mean? |
| U/M | I rub that we be good. |
| CELAJ | What you doing? |
| U/M | Me, shit I was stressed out man. |
| CELAJ | Don't worry about it man, give me two weeks I'll have you right out of there into a fat crib nigger. |
| U/M | Yeah, yo I was stressed out. I was like Pete man, you got to position to get the fuck out of there. He said yo, he's the kid, he looked like he was (UI) you know, (UI). |
| CELAJ | (UI). |
| U/M | (UI) you had to hear (UI) fuck that man, you crazy. We got to get him out. |
| CELAJ | Yo, you had to hear what I told the cops right. Them niggers was trying, they was trying to break me. They're like oh, your friend is telling a story, you better tell us your story. I said yo, listen. All I know is I'm a swinger. I take my girl, I go meet other dudes and their girls and then we fuck. |
| U/M | (Laughing) (UI) |
| U/M | You had the niggers so tight, right. |
| CELAJ | I had the nigger tight. 'cause the nigger told me, he said |
| U/M | Biggest asshole, the biggest asshole was like a draw string already right. |
| CELAJ | Yo, yeah 'cause the nigger, the cop goes to me, he goes listen, the cop tells me, he goes, well what would you do, he said. He said what would you do he said to carry a gun. I said nothing. He said, |

5

|        | |
|--------|---|
|        | what would possess you to carry a gun? I said nothing. He said, if somebody beat your wife up, what would you do? I said I'd call the cops. (Laughing). They said wow, you got an answer for everything. I said I'm telling you, I follow the law, I don't break the rules. So I said, I said weren't you (UI). I said how long have you been married? He said for 16 years. I said you should get into swinging, I said I got a nice looking girl, you let me bang your wife, you can bang my girl. That nigger got tight. (Laughing). I had to see, I had to tell you in person B, I had them tight the whole, I even had the bosses tight. |
| U/M    | Yeah, yeah, I heard, I heard. Pete told me that you had these dudes like on crazy smack. But yo, no more retarded shit B. |
| CELAJ  | Nah, yeah I know because these niggers was over there fucking wilding out, writing statements, talking about oh, we didn't know about what was going on. You don't write no statements, you don't say nothing, mind your fucking business. They just don't understand that (UI). |
| U/M    | (UI) you know there's a lawyer coming in you don't say nothing, yo, yo, you see that card I gave you. |
| CELAJ  | Niggers don't know that son. |
| U/M    | You see that card I gave you, keep reading that card til he comes here. |
| CELAJ  | That's it man. |
| U/M    | Yeah I tell you, (U/I) I'll tell you everything you want to know as soon as he gets here and when, and then we gets there you say yo remember I said I'll tell you, I'm gonna go tell you everything here. Here's what I'm gonna tell you: goodbye. |
| CELAJ  | Nah, I told him, yo, I told the motherfucker, I said listen, I said, you know, I like cops. You guys protect me, you guys are very good people, I said, no disrespect but, you know, I like to talk to an attorney. He said why you stutter? I said I'm nervous. (Laughing) Yo, I swear to God I was wrecking the nigger. The nigger bought me pizza right, they bought everybody pizza. These niggers eating the pizza, I said listen, I said (UI) the movie. I said listen I've seen the movie. I said, I said, I said first I'm on a diet, pizza's no good for you. He said you're on a diet, you weigh fucking 100 pounds. I said you know I see the movies, I said every time you guys feed somebody in the room that means the motherfucker's a rat, I said I'm no rattin. (Laughing) I was dying, I was wrecking them niggers. |
| U/M    | Yeah man. Hell yeah I was (UI). Yo get up with me man when you get the thing, just get to the restaurant. When you got, you got |

6

| | |
|---|---|
| | home today? |
| CELAJ | Yeah. I'm definitely, I'm with my girl right now we're going home and then I wake up in the morning and I'll definitely see if, as a matter of fact we got to, we got to meet up some more anyway 'cause I got something, um, you know we got something of something. |
| U/M | Yeah we got to meet up in the night because I got to be over there early. |
| CELAJ | Yeah. |
| U/M | From Monday, from Monday on I'm good again 'cause you know her daughter, my wife's niece is gonna take care of the baby. |
| CELAJ | Oh that's, well. |
| U/M | 'Cause I told her yo, man I can't, I can't do this, man, like straight weeks like this 'cause this shit is killing me. |
| CELAJ | Yeah. |
| U/M | You know. |
| CELAJ | (UI). |
| U/M | Yo what I need, what I need, I got to get a car D, yo, I'm sweating my ass off (UI). |
| CELAJ | Alright, so my nigger, listen we'll go get you a car tomorrow. |
| U/M | Losing weight. (Laughing) |
| CELAJ | We'll go get you a car tomorrow, baby. |
| U/M | Saturday, can we do it Saturday? Or does it has to be during the week? |
| CELAJ | No it don't got to be during the week it can be Saturday. |
| U/M | So we can do it Saturday cause I got a, yo by nine o'clock I'm gonna be upstate already. |
| CELAJ | Alright so lets. |
| U/M | And I'll be down, I'll be down about seven. |
| CELAJ | Alright, holler at me when you get back down the way. |
| U/M | Alright. |

| | |
|---|---|
| CELAJ | We'll probably go out tomorrow, tomorrow night or something. A little get home, all the niggers got home. Big 300 got home, everybody. |
| U/M | Yeah. |
| CELAJ | Yeah, I was a little scared. |
| U/M | They talk about they made, they made things man, that they, you know, that they was writing shit down man. Why you all niggers writing shit? |
| CELAJ | Who's you all? |
| U/M | Huh? |
| CELAJ | What do you mean you all? |
| U/M | Nah, not you. All I'm saying but they said the dudes were writing shit down. That they, that they, that they. |
| CELAJ | Yeah them niggers (UI). |
| U/M | That they, that they, they hit them with charges. |
| CELAJ | Yeah. I know man, them niggers bugged out man. I told them niggers yo, don't say nothing. I told them in the car I said yo, I don't care what them niggers tell you they can't help you. Do not fucking talk to the cops. They can't do nothing for you. Don't talk to them. These niggers still talked to them. |
| U/M | Yeah. |
| CELAJ | They incriminated themselves, now the motherfuckers got fucking A1 felonies. They're stupid man. |
| U/M | (U/I) |
| CELAJ | I was wrecking, I see, you know I know they was writing statements? First they told me they wrote statements. Plus, I seen them niggers in, like when I was getting fingerprinted I can see through the window that they're over there recording everything the nigger is saying D. The nigger's 300, 300 pounds D. |
| U/M | Huh. Come on man I don't (UI). |
| CELAJ | Yeah but I, you know what I got scared of right? |
| U/M | What? |
| CELAJ | You hear me? |

8

| | |
|---|---|
| U/M | What? |
| CELAJ | I got scared cause the nigger, you know, I got scared cause they let this nigger leave, they let this nigger Pete leave right in front of my face and they were like you see your friend right. You see your friend, well he told everything that happened that's why he's going home right. But I know it was bullshit but, you know, I don't know that good. So I talked to, I talked to this nigger, I talked to 300 and I'm like yo, what up son. He's like yo, I don't know. I just know that nobody in here knows my name as 300 but Pete and them detectives said that Pete told them my name. So then I was like oh shit what the fuck. But D that made me, and I told 300 I said yo son, I said I could take ten years right now I said, I just don't, the only thing that would really kill me is if it's true about this nigger man. That's it. I just hope this nigger ain't say nothing, that's it. I don't care, I could do ten years, I just, I hope, like I was never expecting it from that nigger, smacking out of his mouth. I'm good. As long as that nigger is good, you know, as long as I ain't have to worry about him saying nothing I would have took ten years or more to cop out. |
| U/M | Yeah but you know what it was with him right that he threw his thing out. They were doing it through the phones but they couldn't pin nothing on you because the shit that he had to call you he threw it away. |
| CELAJ | No matter what they couldn't pin nothing on none of us because me and Pete never called none of them other dudes. |
| U/M | Yeah. That's the whole thing but. |
| CELAJ | So we're good. |
| U/M | But he did call, Pete did, they called them on Pete's phone but Pete flipped his chip because he ran out of minutes. |
| CELAJ | So (UI). |
| U/M | (UI). |
| CELAJ | I was right there I seen him. |
| U/M | He threw it out and when his phone came in there were no calls from them. |
| CELAJ | I know. |
| U/M | So they couldn't put it together, that's why they was holding everybody's cells. |
| CELAJ | I know. They didn't have my cell phone. |

9

| | |
|---|---|
| U/M | You know. |
| CELAJ | They didn't have my cell phone since (UI). |
| U/M | Yeah they didn't have that. |
| CELAJ | All my cell phones was in Pete's car. |
| U/M | Yeah. |
| CELAJ | Pine, my nigger, well I got to, |
| U/M | I got away with the evidence man, so that, its wrapped up. Fuck them. |
| CELAJ | I got the Rover now but the shit got a fucking flat in the back D, I don't know how it got a flat. |
| U/M | The Range? |
| CELAJ | Yeah I got, the back, the left tire in the back is fucking flat so I got to go put some air in it before I get home, alright. |
| U/M | Alright man. |
| CELAJ | Alright man, I love you man. Be easy, talk to you tomorrow my nigger. |
| U/M | Alright, got love for you man. |
| CELAJ | Alright. |
| U/M | Be safe and be home B. |
| CELAJ | Yeah. |
| U/M | Alright my nigger. |
| CELAJ | Bye. |
| U/M | Later. |
| CELAJ | Alright, later. |

# Exhibit B



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 5, 2008

BY FACSIMILE
B. Alan Seidler, Esq.
580 Broadway
New York, New York 10012

    Re: <u>United States v. Rodriguez et al.</u>
      07 Cr. 699 (HB)

Dear Mr. Seidler:

  Enclosed please find a court subpoena for your client, Din Celaj, to testify at the trial captioned above, which I understand you are willing to accept on behalf of your client. Please indicate below, by putting your signature on the applicable line, whether your client will comply with this subpoena and testify at this trial, or will invoke his Fifth Amendment right against self-incrimination and will refuse to testify.

_____ Din Celaj will comply with the enclosed subpoena and will testify at the trial of <u>United States</u> v. <u>Rodriguez et al.</u>, S1 07 Cr. 699 (HB).

 Din Celaj will invoke his Fifth Amendment right against self-incrimination and will not testify at the trial of <u>United States</u> v. <u>Rodriguez et al.</u>, S1 07 Cr. 699 (HB).

        Very truly yours,

        MICHAEL J. GARCIA
        United States Attorney
        Southern District of New York

    By: *[signature]*
      Todd Blanche
      Assistant United States Attorney
      Tel: (212) 637-2494
      Fax: (212) 637-2390

Encl.